NANCY MIRANDA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT FRANK MIRANDA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miranda v. Commissioner
Docket Nos. 3995-71, 3997-71.
United States Tax Court
T.C. Memo 1974-83; 1974 Tax Ct. Memo LEXIS 236; 33 T.C.M. (CCH) 438; T.C.M. (RIA) 74083; April 4, 1974, Filed. *236 Arthur N. Nasser, for the petitioners. James F. Hanley, Jr., for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in Federal income tax against petitioners for the taxable years 1967 and 1968 in the amounts of $8,816.45 and $7,811.15, respectively.Petitioners filed separate petitions from the same statutory notice of deficiency and the cases were consolidated for trial, briefs and opinion. The sole question presented is whether funds illegally acquired by petitioners and appropriated to their own use constitute income taxable to them in the years they were so acquired. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners are husband and wife. At the time of filing their petitions herein, they resided in Chicago, Illinois. Joint Federal income tax returns for the years 1967 and 1968 were filed by the petitioners with the district director of internal revenue at Chicago, Illinois. During the taxable years 1967 and 1968, Nancy Miranda (hereinafter referred to as Nancy) was employed as *237 a bookkeeper by Weisgal, Field & Co. (Weisgal), a Chicago accounting firm. During the course of her employment, she prepared checks for a client of the firm, Utility Electric Co. (Utility), drawn on an account at American National Bank of Chicago (American), but she was not authorized to sign the checks. On February 27, 1967, petitioners opened a checking account at the Hartford Plaza Bank (Hartford), Chicago, Illinois, in the name of West-Bender Co., a fictitious partnership. During 1967 Nancy forged 33 Utility checks totaling $28,859.75 which were made payable to West-Bender Co. During 1968 she similarly forged 15 Utility checks amounting to $24,609.94 which were also payable to West-Bender Co. The checks were deposited in the Hartford checking account and withdrawals from the account were deposited by the petitioners to their joint personal checking account at the same bank or expended as cash. During the two years involved, the funds were primarily expended for an automobile, a boat, a fur coat, a hi-fi, airline tickets, rent, department store purchases, credit card payments, Frank's pilot lessons, and Frank's school tuition and school books.
Nancy left her employment *238 at Weisgal on October 31, 1968, to work for Bruno Appliance & Furniture Co. Evidence of her check forgeries was discovered shortly thereafter, and an insurance investigator from Fireman's Fund Insurance Co. (Fireman's) interviewed Nancy on December 14, 1968. After the investigator began questioning her, the petitioners closed their personal checking account at Hartford. Nancy destroyed all canceled checks, deposit slips, and check registers relating to both the West-Bender account and petitioners' personal checking account. Shortly thereafter she employed an attorney. She met with her attorney during the month of December, and in late December 1968 or in January 1969, the attorney contacted the insurance investigator on her behalf. On February 25, 1969, the petitioners were indicted by the State of Illinois for theft and conspiracy to steal checks and funds totaling $53,469.84 from Utility. On July 23, 1969, they were also indicted for forgery in connection with the Utility checks. After the first indictment had been returned in February 1969, Nancy met with her attorney and was advised that she would have to go to court and would not be able to engage in negotiations with *239 the insurance company. On December 29, 1969, the petitioners entered pleas of guilty in the criminal division of the Circuit Court of Cook County and were convicted of theft of the funds illegally acquired from Utility, and forgery of the company's checks. In return for guilty pleas, the petitioners were offered probation on the condition that restitution be made to Fireman's, which on September 24, 1969, succeeded to Utilities' claim against the petitioners. They were placed on probation for a period of five years and were ordered to pay $50,000 to the chief probation officer for the benefit of Fireman's. The terms of the restitution were an initial payment of $1,500 and $400 per month thereafter. The petitioners commenced making restitution payments of the funds to the Adult Probation Department (Probation Department) of the State of Illinois for the benefit of Fireman's by paying $1,500 on December 29, 1969. During 1970 petitioners made payments totaling $2,800, but ceased making payments in August 1970. They resumed making such payments on March 13, 1971. On January 14, 1971, Fireman's instituted civil suit in the Circuit Court of Cook County against the petitioners *240 for damages arising from the theft and forgery of the Utility checks. The court entered a default judgment on July 28, 1971, in favor of Fireman's for the sum of $56,200 and made a special finding that malice on the part of petitioners was the gist of the action. In October 1971, the monthly payments required as a condition of their probation were reduced by the criminal court from $400 to $150 per month upon the petition of the Mirandas. The petitioners repaid $890 of the illegally acquired funds during 1971 and $900 during 1972. The total amount repaid by the petitioners from 1969 throught 1972, pursuant to their probation order, was $6,090. The petitioners did not enter into any agreement with either Utility or Fireman's to repay the funds illegally acquired in 1967 and 1968. No part of the illegally acquired funds were included by petitioners in their joint Federal income tax returns filed for 1967 and 1968 or repaid during these two years. Petitioners attached to their Federal income tax return for the taxable year 1968 the following statement: Both Frank and Nancy B. Miranda were indicated by the State of Illinois, County of Cook, indictment number 69-719, on February 25, 1969 and *241 charged with theft of $53,469.74 from Utility Electric Company, Inc., Chicago, Illinois, none of which amount is included herein or on prior years income tax returns of the taxpayers as income. A plea of not guilty was entered by the defendants in said proceeding and they are presently awaiting trial. When a final judicial determination of the issues involved in said indictment is entered the taxpayers will do whatever is necessary, in the light of said judicial determination, with respect to their income tax returns for the year 1968 or prior years. OPINION Petitioners illegally obtained funds during 1967 and 1968. In this proceeding they do not deny that they obtained the funds, nor do they dispute the amount of the funds acquired. They do not question the application of , which results in the misappropriated funds being taxable as income in the respective years of misappropriation. Petitioners contest the Commissioner's determination on a very narrow ground, the application of , on appeal (C.A. 2, Dec. 11, 1972). We held in , that embezzled funds *242 were not taxable to the embezzler in the year of the embezzlement. In so doing we said, ): In the instant case, * * * the embezzlement of funds by the petitioner, his recognition of the obligation to repay the embezzled funds, and the making of arrangements for the repayment of those funds, all took place within the same taxable year. Furthermore, in the instant case, there was a consensual recognition of an obligation to repay the embezzled funds in that the petitioner, at the request of his employer, confessed judgment for the amount due. * * * Where there is "consensual recognition" of indebtedness within the same taxable year, formalized by a confession of judgment, such a transaction does not result in the realization of taxable gain. , is a case with a limited perimeter and petitioners cannot come within its ambit. The consensual recognition of indebtedness must occur within the year of wrongful taking in order to avoid taxability. Blaine S. Fox, 61 T.C. (Mar. 7, 1974). In the instant case the only actions of Nancy in 1968 which could remotely be construed as "consensual recognition" of indebtedness would be her *243 discussions with her attorney. These actions could only free petitioners of tax for 1968, if at all, because nothing occurred in 1967 which would imply consensual recognition of indebtedness for the funds acquired in 1967. The actions of Nancy in 1968 are not sufficient to constitute consensual recognition of indebtedness which was referred to in ; accordingly, Buff does not apply. Blaine S. Fox, supra. Decisions will be entered for the respondent.